IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| IN RE: TODD J. YOUNGBLOOD, MD § | |
| § | CASE NO.   21-21260-H2-7 |
| DEBTOR § | |
| § | |
| TODD J. YOUNGBLOOD, MD AND § | |
| JENNIFER YOUNGBLOOD, MD § | |
| Plaintiffs § | |
| § | |
| v. § | |
| § | ADVERSARY NO. |
| BNY MELLON, NA, PERSHING LLC, § | |
| SECURIAN FINANCIAL SERVICES, § | |
| INC., AND CATHERINE CURTIS, § | |
| CHAPTER 7 TRUSTEE § | |
| Defendants § | |

## COMPLAINT TO DETERMINE LIEN AND INTEREST IN ESTATE PROPERTY

Todd J. Youngblood, MD ("**Debtor**") and his non-filing spouse, Jennifer Youngblood, MD, ("**Plaintiffs**") file this Complaint to obtain a determination that BNY Mellon has an enforceable and unavoidable interest in and lien against property of the bankruptcy estate.

### SUMMARY OF FACTS AND RELIEF REQUESTED

The Debtor and his non-filing spouse ("**The Youngbloods**") borrowed $1.1 million from BNY Mellon for the purchase of their homestead. BNY Mellon did not require the Youngbloods to make a down payment toward the loan, but instead required the Youngbloods to pledge their homestead and the entirety of their brokerage account, held by Pershing LLC, as collateral for the loan.

Subsequently, the Debtor filed a Chapter 7 bankruptcy petition and the Chapter 7 Trustee has taken the position that the estate is entitled to the funds held in the brokerage account that was pledged by the Youngbloods as collateral for the loan.

The Youngbloods have filed this Adversary seeking a determination from the Court that BNY Mellon has an enforceable and unavoidable interest in, and lien against, the entirety of the

Page - 1

their brokerage account, and that the Chapter 7 Trustee is not entitled to receive any of the funds in the brokerage account for the benefit of the estate.

## PARTIES AND JURISDICTION

1. Todd and Jennifer Youngblood, are the Plaintiffs in this Adversary, and may be served with pleadings and process in this adversary proceeding through his undersigned counsel.

2. BNY Mellon, National Association may be served with pleadings and process at 500 Grant Street, Room 151-3828, Pittsburgh, PA 15258.

3. Securian Financial Services, Inc. may be served with pleadings and process at 400 Robert Street North, St. Paul, MN 55101-2098.

4. Pershing LLC may be served with pleadings and process at 300 Colonial Center Parkway, Suite 400, Lake Mary, FL 32746

5. Catherine Curtis, Chapter 7 Trustee, may be served with process through her attorney of record, Steven Shurn at 1201 Louisiana, 28th Floor, Houston, TX 77002.

6. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K).

7. Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

8. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334.

9. This adversary proceeding relates to the chapter 7 bankruptcy case, *In re Youngblood* 21-21260-H2-7, in the United States Bankruptcy Court for the Southern District of Texas, Houston Division.

## STATEMENT OF FACTS

### HOMESTEAD PURCHASED

10. In June, 2021, Todd Youngblood ("**Debtor**") and his non-filing spouse, Jennifer Youngblood (collectively referred to as "**The Youngbloods**") decided to purchase a home located at 24714 Lake Kent Lane, Spring Texas 77389 for $1.1 million ("**Homestead**").

11. The Youngbloods needed to finance the purchase of the Homestead and contacted BNY Mellon for financing options as the Youngbloods had a pre-existing relationship with BNY Mellon, NA ("**BNY**") for many years.

12. The Youngbloods have maintained a securities account at Pershing LLC ("**Pershing**") (an entity owned by BNY Mellon) that is identified as account number Pershing 5TL-015643 ("**Brokerage Account**"). Securian Financial Services, Inc. ("**Securian**") is the broker for the Brokerage Account.

**BNY M<span/>ELLON O<span/>FFERED F<span/>INANCING**

13. BNY advised the Youngbloods that they could borrow $1.1 million from BNY in order to finance the purchase of the Homestead.

14. On June 7, 2021, the Youngbloods obtained an adjustable rate note from BNY for $1.1 million that did not require the Youngbloods to make a down payment toward the loan. In return, BNY required the Youngbloods to pledge the Homestead and the Brokerage Account as collateral for the loan ("**The Loan**"). *See Exhibit A*

**S<span/>ECURITY A<span/>GREEMENT A<span/>ND S<span/>ECURITIES A<span/>CCOUNT C<span/>ONTROL A<span/>GREEMENT**

15. On June 7, 2021, the Youngbloods were required to execute a document titled, *"Additional Collateral Pledge and Security Agreement",* pledging the Brokerage Account as collateral for the Loan to BNY ("**Security Agreement**"). *See Exhibit B*

16. Pursuant to the Security Agreement, the Youngbloods, pledged, assigned and transferred to BNY the entirety of the Brokerage Account as security for the obligations under The Loan.

17. The Security Agreement specifically provides that the Youngbloods grant BNY a continuing security interest in the Brokerage Account, specifically including all cash, money market accounts, securities, securities entitlements, instruments, investment property and other financial assets or property that existed or were subsequently transferred in to the Brokerage Account when the Security Agreement was executed.

18. Furthermore, pursuant to the Security Agreement, the Youngbloods agreed to defend BNY's interest in the Brokerage Account against the claims and demands of "all other persons".

19. In addition to the Security Agreement, the Youngbloods executed a Securities Account Control Agreement ("**Control Agreement**") with BNY and Pershing LLC ("**Pershing**") covering the Brokerage Account. *See Exhibit C*

**B<span/>ANKRUPTCY F<span/>ILED**

20. On October 12, 2021 ("**Petition Date**"), the Debtor filed a Chapter 7 Bankruptcy case, and Catherine Curtis was appointed to serve as the Chapter 7 Trustee in the Bankruptcy Case ("**Trustee**").

21. Jennifer Youngblood, the Debtor's spouse, did not file.

22. As of the Petition Date,
    a. BNY was owed approximately $1.1 million pursuant to the Note.
    b. The value of the Homestead is approximately $950,000.00.

    c. The Brokerage account had a value of approximately $641,639.08.

**TRUSTEE'S POSITION REGARDING BROKERAGE ACCOUNT**

23. The Trustee is taking the position that the bankruptcy estate is entitled to the Brokerage Account even though it is fully encumbered.

24. Pursuant to the Security Agreement, the Brokerage Account shall be held as security until:
    a. The mortgage is paid in full; or
    b. If/when all four (4) conditions set forth in Appendix A of the Security Agreement have been met.

25. Here, the Youngbloods have not paid the mortgage in full and owe BNY in excess of $1 million on the Note.

26. Appendix A of the Security Agreement requires that all four of the following conditions must be met in order for the Brokerage Account to be released as collateral for the loan:
    a. **First Condition**: The Youngblood have delivered to BNY a written request for BNY to release its security interest in the Brokerage Account.
        a. Here, the Youngbloods have never delivered a request to BNY to release its security interest in the Brokerage Account.
    a. **Second Condition**: The Youngbloods have not defaulted and certify there are no conditions present that would constitute a default under the Note, the Security Agreement or any other document relating to the Loan or any property securing the Loan.
        a. Here, the Youngbloods cannot and have not made such a certification to BNY.
    b. **Third Condition**: The Youngbloods payment history on the Loan as "determined by the Lender", in its sole discretion has been satisfactory.
        a. The Youngbloods do not know whether BNY will determine whether their payment history has been satisfactory.
    c. **Fourth Condition**: Either of the following two additional conditions must be met (1) The loan balance is reduced to $825,000.00; or (2) the Youngbloods agree to have the Homestead re-appraised (with the appraisal resulting in an increased home value sufficient to satisfy the requirements contained in the agreement), but the appraisal CANNOT occur prior to the one-year anniversary of the Note date.
        a. The balance on the Note is in excess of $825,000.00.

      b. As of the Petition Date, one-year had not expired since the execution of the Note.

27. In summary, pursuant to the Security Agreement, the Brokerage Account cannot be released as collateral for the loan.

## THE LAW

28. When a security interest attaches to collateral, it is enforceable against the debtor. *See* TEX.BUS.COM. CODE § 9.203(b). Revised Article 9 of the Texas Uniform Commercial Code ("UCC") uses the term "attach" to define the point when property becomes subject to a security interest. Specifically, Section 9.203(b) provides that a security interest is enforceable against the debtor with respect to the collateral if:
    a. Value has been given;
    b. The debtor has rights in the collateral; and
    c. Security agreement was executed.
29. Here, the Youngbloods had rights to the Brokerage Account, received value (*i.e.* $1.1 million from BNY), and executed the Security Agreement attached as *Exhibit B*.
30. A security interest is enforceable against third-parties, including the Trustee, once it is perfected. BNY Melon perfected its interest by executing the Control Agreement attached as *Exhibit C*.

## CAUSE OF ACTION #1

31. The allegations set forth above are incorporated herein by reference.
32. As discussed in detail above, BNY's security interest has attached to the Brokerage Account and it has been properly perfected.
33. Furthermore, the Brokerage Account has been FULLY pledged as collateral for the Loan and all four of the conditions have not been in met in order for the Brokerage Account to be released as collateral for the Loan.
34. The Youngbloods respectfully request that the Court enter a judgment finding that BNY has a valid, enforceable and unavoidable interest in, and lien against, the entirety of the Youngblood's Homestead and Brokerage Account, and that BNY Mellon, Pershing, and Securian shall not release or turn over any of the funds held in the Brokerage Account to the Trustee.

**WHEREFORE**, Todd J. Youngblood and Jennifer Youngblood, pray this Court enters a judgment finding that 1) BNY Mellon, NA has a valid, enforceable and unavoidable interest in and lien against the entirety of the Brokerage Account and the Debtor's homestead; and 2) The Chapter 7 Trustee is not entitled to any of the funds held in the Brokerage Account.

Dated: January 19, 2022

Respectfully submitted,

By: */s/ Miriam T. Goott*
Miriam T. Goott
SBN 24048846
Walker & Patterson, P.C.
P.O. Box 61301
Houston, TX 77208
(713) 956-5577 (telephone)
mgoott@walkerandpatterson.com
COUNSEL FOR THE PLAINTIFFS